NO. 07-02-0438-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 31, 2004

_____


CHRISTINE PESINA, INDIVIDUALLY
AND AS NEXT FRIEND OF ERIC MARTINEZ, APPELLANT

V.

MARK ALAN HUDSON, GERALD HUDSON
AND BECKY HUDSON, APPELLEES

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-513,832; HONORABLE JOHN FORBIS, JUDGE

_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

Appellant Christine Pesina, individually and as next friend of Eric Martinez, sued Mark Hudson and his parents, appellees Gerald and Becky Hudson, because of injuries Eric suffered while a passenger in an automobile being driven by Mark. Christine alleged that Gerald and Becky (collectively, "the Hudsons") negligently entrusted the automobile

to Mark. The trial court granted summary judgment to the Hudsons. We reverse and remand.

## BACKGROUND

On April 11, 2001, the Hudsons allowed their son, Mark, to use an automobile to drive himself and Eric Martinez, Christine's son, to school. While he was driving to school, Mark collided with another vehicle and Eric was injured.

Christine filed suit against Mark and the Hudsons. According to Christine's petition, Mark pulled up to a stop sign, then pulled into the intersection without yielding to an automobile on the intersecting roadway. Christine alleged, *inter alia*, that Mark negligently failed to keep a proper lookout, failed to stop at the stop sign, failed to yield the right of way to the other vehicle, and entered the intersection when he could not do so safely. She alleged that the Hudsons acted negligently in entrusting their vehicle to Mark because they knew or should have known that Mark was a reckless or incompetent driver.

The Hudsons filed a motion for summary judgment supported by summary judgment evidence. They urged that no genuine issues of material fact existed regarding whether, at the time the Hudsons entrusted their vehicle to Mark on the morning of April 11th, (1) Mark was an unlicensed, incompetent or reckless driver, or (2) the Hudsons knew or should have known that Mark was an unlicensed, incompetent or reckless driver. The Hudsons urged both that there was no evidence on the challenged elements of negligent

entrustment, see TEX. R. CIV. P. 166a(i),[1] and that the summary judgment evidence proved, as a matter of law, that (1) Mark was not an unlicensed, incompetent or reckless driver, and (2) the Hudsons did not know, nor should they have known, that Mark was an unlicensed, incompetent or reckless driver.  See TRCP 166a(c).

The Hudson's motion for summary judgment sets out the several instances of Mark's driving history on which Christine relied in her claim of negligent entrustment, although the Hudsons disputed Christine's claim that the several instances were evidence supporting her position.  According to their motion and the summary judgment evidence, Mark was involved in six motor vehicle incidents as a driver during a period of less than two years prior to the April 11, 2001 accident in which Eric was injured:

> a.  In October 1999, Mark, Eric, and two other boys drank whiskey, rum, vodka and tequila at one of the boy's homes. Mark then drove the four of them to school.  He was sent home and suspended for three days.  Mark testified that he was intoxicated on the occasion, although he was not stopped while driving and no test was administered to determine his blood alcohol level.  The Hudsons were aware of the incident and took corrective action by removing Mark's driving, television, telephone and other privileges for a time.  According to Mark's testimony, "They felt that if I didn't have the responsibility to drive safe, I shouldn't be driving, and I was grounded there for some time."

> b.  In the spring of 2000, Mark bumped a tree while practice driving in a church parking lot.  His mother was with him at the time, and the impact damaged the car's bumper and grille.  Gerald was aware of the incident.

> c.  During the summer of 2000, Mark, while alone late at night, was ticketed for driving 75 mph in a 65 mph speed zone. The Hudsons were aware of the ticket.  They punished Mark by taking away his driving privileges for a time.

---

[1]Further reference to a rule of Civil Procedure will be by reference to "TRCP __."

d. A collision incident occurred in October 2000.[2] Mark was following a vehicle which slowed to turn and Mark pulled out to go around the vehicle. To avoid an oncoming car he braked, turned back toward the vehicle he was trying to pass, and rear-ended it in what was referred to as a minor collision. Mark told his parents about the accident.

e. On two separate occasions in late 2000 or early 2001, Mark used marijuana and then drove an automobile. The Hudsons found out later about the incidents. They took corrective action by taking Mark's vehicle away from him and did not return the vehicle until Mark had two "clean" drug tests.

The Hudsons urged in the trial court and maintain on appeal that none of the incidents, taken separately, comprise more than a scintilla of evidence that Mark was an unlicensed, incompetent, or reckless driver, and thus that the Hudsons could not have known that he was such a driver. In addition, the Hudsons' motion for summary judgment asserted that Mark was in nowise impaired or had any condition on the morning of the accident.

Christine's response to the motion for summary judgment attached and referenced deposition testimony from Mark and the Hudsons. Her response claimed that summary judgment should be denied because the evidence she attached was sufficient to raise a fact question as to whether the Hudsons entrusted a vehicle to Mark when they knew or should have known that he was a reckless driver. Her response did not urge that Mark was unlicensed or was an incompetent driver.

---

[2]Mark's testimony dated both the collision incidents in 2000; other testimony raised the inference that they may actually have occurred in 1999. In their summary judgment motion, the Hudsons represented to the trial court that the second collision incident occurred in October of 2000.

The trial court signed an order granting summary judgment as to the negligent entrustment claim on April 29, 2002. By a July 26th order of severance, the negligent entrustment claim against the Hudsons was severed from the remainder of the case.[3]

On appeal Christine contends that Mark's driving history prior to April 11, 2001, inferences to be drawn from that history, and the Hudsons' knowledge of the history comprise more than a scintilla of evidence that Mark was a reckless driver and that the Hudsons knew or should have known of his recklessness. She also contends that the Hudsons' motion for summary judgment was legally insufficient. Because of our disposition of the appeal we do not consider whether the motion for summary judgment was legally sufficient. TEX. R. APP. P. 47.1.

STANDARD OF REVIEW

A no-evidence summary judgment will be granted only when: (1) there is a complete absence of evidentiary support for a necessary element of the claim, (2) rules of law or rules of evidence will not allow the court to give weight to the evidence offered to prove a necessary element of the claim, (3) the evidence offered to prove a necessary element of the claim is no more than a mere scintilla, or (4) the evidence conclusively establishes that a necessary element of the claim does not exist. See Merrell Dow Pharms., Inc. v. Havner,

---

[3]Christine's notice of appeal identifies the July 26, 2002 order as the order appealed from. The July 26th order merely severs the negligent entrustment claim from the negligence claim. We conclude, however, that the notice of appeal constitutes a *bona fide* attempt to invoke this court's jurisdiction over the summary judgment and is sufficient to invoke our jurisdiction. See City of San Antonio v. Rodriguez, 828 S.W.2d 417, 418 (Tex. 1992) (per curium); Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc., 813 S.W.2d 499, 500 (Tex. 1991).

-5-

953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment may not be granted if the non-movant presents more than a scintilla of probative evidence to establish the disputed element(s). See TRCP 166a(i); Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002). More than a scintilla of evidence is presented if the evidence enables reasonable and fair-minded people to reach differing conclusions. Merrell Dow Pharms., 953 S.W.2d at 711. Less than a scintilla of evidence is presented if the evidence does no more than create mere surmise or suspicion of a fact. See Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983).

A traditional summary judgment requires application of the standards established in Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985): (1) the movant for summary judgment has the burden of showing that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law, (2) in deciding if there is a disputed material fact issue, the reviewing court must take as true all evidence favorable to the non-movant, and (3) every reasonable inference must be indulged in and any doubts resolved in favor of the non-movant. Id. Summary judgment is proper for a defendant if the defendant affirmatively disproves at least one element of the plaintiff's claim or establishes all necessary elements of an affirmative defense to the claim. See American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997).

We will examine the record in light of Christine's response in the trial court which urged that more than a scintilla of evidence was presented on the issue of Mark's being a reckless driver. See Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 203-04 (Tex. 2002). In examining the record, we consider any evidence presented in the light most

favorable to the non-movant Christine.  See Wal-Mart Stores, 92 S.W.3d at 506; Johnson, 73 S.W.3d at 208.

NEGLIGENT ENTRUSTMENT

A cause of action for negligence has three elements: (1) a legal duty owed by one party to another, (2) a breach of that duty, and (3) damages proximately caused by that breach.  See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). A claim for damages based on the theory that a party negligently entrusted a vehicle to another and thereby caused damages has the same three elements.  See Garcia v. Cross, 27 S.W.3d 152, 155 (Tex.App.--San Antonio 2000, no pet.).

Christine claims that the Hudsons negligently entrusted their vehicle to Mark because: (1) the Hudsons entrusted to Mark a vehicle they owned or over which they had the right of control, (2) at the time of entrustment Mark was a reckless driver, (3) the Hudsons knew or should have known at the time of entrustment that Mark was a reckless driver, (4) Mark was negligent on the occasion in question, and (5) Mark's negligence proximately caused the accident.  See Schneider v. Esperanza Transmission Co., 744 S.W.2d 595, 596 (Tex. 1987); McCarty v. Purser, 379 S.W.2d 291, 294 (Tex.1964).

To obtain recovery against the Hudsons, Christine essentially must prove two negligence causes of action in one lawsuit.  One cause of action requires proof that Mark's negligence in operating the vehicle proximately caused the accident and Eric's injuries (elements 4 and 5 of her allegations).  The other cause of action requires proof that the Hudsons were negligent in entrusting a vehicle to Mark because he was a reckless driver

and that their negligence was a proximate cause of Eric's injuries (elements 1, 2 and 3 of her allegations together with proximate causation). See Schneider, 744 S.W.2d at 596-97 (entrustment liability rests upon the combined negligence of the entrustor in entrusting the vehicle and the negligence of the driver entrusted with the vehicle; the risk that forms the basis for determining that the entrustment was negligent must also be a proximate cause of the accident in question for the entrustor to be liable); McCarty, 379 S.W.2d at 294. It is the elements of the latter of the two negligence causes of action that the Hudsons challenged by their summary judgment motion.

On appeal, the Hudsons seek to sustain their summary judgment by asserting that Mark was not a reckless driver and, therefore, they could not have known that he was a reckless driver. Additionally, the Hudsons argue that there was no evidence that their entrustment, even if negligent, was a proximate cause of the damages asserted. See Schneider, 744 S.W.2d at 596-97; McCarty, 379 S.W.2d at 294.

At the outset, we decline to consider the Hudsons' assertion that their entrustment of the vehicle to Mark, even if negligent, was not a proximate cause of Eric's injuries. The issue was not expressly presented in the trial court by their motion for summary judgment. See TRCP 166a(c); Johnson, 73 S.W.3d at 204; Casso v. Brand, 776 S.W.2d 551, 553 (Tex. 1989).

In focusing on the issue of whether Mark was a reckless driver, the Hudsons urge us to apply the definition of "reckless" which the Legislature has used in criminalizing reckless driving. The criminal offense of reckless driving is committed when a person drives

a vehicle in wilful or wanton disregard for the safety of persons or property. TEX. TRANSP. CODE ANN. § 545.401 (Vernon 1999). Wilful and wanton disregard is synonymous with conscious indifference. See White v. State, 647 S.W.2d 751, 753 (Tex.App.–Fort Worth 1983, writ ref'd). The Hudsons do not cite authority for their proposition. Nor do we find authority requiring the driving history of an entrustee to reflect a pattern of wilful and wanton actions in disregard for the safety of other persons or property before the entrustee can be found to be "reckless" for the purposes of a negligent entrustment action.

On the other hand, we note that in regard to negligent entrustment, drivers have been determined to be reckless when their history of driving habits, traffic violations, or intemperance (whether due to wilful and wanton actions or otherwise) exhibits a pattern of such deviations from lawful and proper manner of vehicle operation that if the entrustor had knowledge of the history, the entrustor should reasonably have anticipated that the driver would operate the entrusted vehicle in a wrongful manner and thereby damage persons or property. See Schneider, 744 S.W.2d at 596; Louis Thames Chevrolet Co. v. Hathaway, 712 S.W.2d 602, 604 (Tex.App.–Houston [1st Dist.] 1986, no writ); Revisore v. West, 450 S.W.2d 361, 364 (Tex.Civ.App.–Houston [14th Dist.] 1970, no writ); Broesche v. Bullock, 427 S.W.2d 89, 93 (Tex.Civ.App.–Houston [14th Dist.] 1968, writ ref'd n.r.e.). We decline to engraft the heightened standard for criminalized reckless driving onto the common-law negligent entrustment cause of action.

The Hudsons also argue that because there is no evidence that Mark actually was under the influence of alcohol or marijuana on the occasions in question, the evidence that

he drove after using the substances cannot be considered in regard to whether he was a reckless driver. We disagree.

The episodes of Mark's driving after using alcohol and marijuana were of sufficient concern to the Hudsons that they temporarily suspended Mark's privileges to drive when they found out about the situations. Mark testified that the suspension for his drinking and driving was because the Hudsons considered the matter a safety issue. Viewing the evidence in the limited record before us in the light most favorable to Christine, evidence that Mark used marijuana[4] and that the Hudsons restricted Mark's driving privileges based on their knowledge of that usage raises a similar inference that they considered the matter a driving safety issue. Such matters could be considered[5] in regard to whether Mark was a reckless driver; that is, whether Mark's driving history was such that the Hudsons should reasonably have anticipated that Mark would operate an entrusted vehicle in an unsafe manner, resulting in damage to persons or property.

The Hudsons further argue that the instances in which Mark drove after drinking and after using marijuana should not be considered in regard to the negligent entrustment claim because there is no allegation that Mark used alcohol, marijuana or any similar substance

---

[4]Whether evidence that Mark used alcohol or marijuana before driving will be admissible at trial without proof that his driving abilities were impaired thereby or that he was intoxicated while driving are questions not presented and we offer no opinion on those matters.

[5]We offer no opinion as to whether the instances of Mark's driving after using alcohol and marijuana, without consideration of the additional driving incidents and speeding ticket, comprise evidence that Mark was a reckless driver sufficient for Christine to avoid summary judgment.

on the morning of the accident, and the risk which might have been anticipated from those past instances was not a proximate cause of the accident. See Schneider, 744 S.W.2d at 596-97. As noted previously, we will not consider the proximate cause aspect of the Hudsons' argument because they did not present the issue in their motion for summary judgment.

## NO-EVIDENCE SUMMARY JUDGMENT

If each incident is viewed separately, as the Hudsons assert should be done, none of the episodes might, in and of themselves, be sufficient evidence for Christine to avoid summary judgment. But, they are not to be viewed separately and in isolation from one another. The term "history" commonly is used to reference those past events that form the subject matter of a history. See In the Matter of the Marriage of Stein, No. 07-03-0289-CV *7 (Tex.App.--Amarillo 2004, no pet. h.); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 549 (10th ed. 2002). Mark's "history" of driving habits, traffic violations and intemperance includes all such events predating the Hudsons' entrustment of a vehicle on the date of the accident. And, viewing the events of that history in the light most favorable to Christine's claim, each of the instances could be considered in relation to whether Mark was a reckless driver.

The series of events, compressed as they were to within an approximate two-year period preceding the date of the accident, presented more than a scintilla of evidence that Mark was a reckless driver within the context of a negligent entrustment cause of action. Thus, the grant of a no-evidence summary judgment would have been improper.

TRADITIONAL SUMMARY JUDGMENT

Mark testified in his deposition that he was intoxicated when he drove himself and several friends to school after drinking whiskey, rum, vodka and tequila. He testified that he drove after using marijuana on at least two other occasions, and summary judgment evidence was not presented to conclusively prove that he was not impaired by the marijuana. See TEX. TRANSP. CODE ANN. §§ 521.343(a)(3), 521.372(a)(1) (Vernon 1999 and Supp. 2004). Nor does the summary judgment proof show that, as a matter of law, Mark (1) did not deserve the speeding ticket, (2) was not at fault in the collision with the tree (a fixed object), or (3) was not at fault in the rear-end collision with another automobile.

In sum, the Hudsons did not prove, as a matter of law, that one or more of the referenced incidents were not of a type to be considered on the question of Mark's alleged recklessness as a driver. We have previously determined that the events comprising Mark's history, as a whole, presented at least a scintilla of evidence that Mark was a reckless driver within the context of a negligent entrustment cause of action. Thus, the Hudsons did not prove by their summary judgment evidence that, as a matter of law, Mark was not a reckless driver.

Finally, we consider the Hudsons' uncontroverted proof that they took corrective action following Mark's driving transgressions. Given the record before us those actions and the small amount of time which elapsed between the last corrective action and the accident did not prove that, as a matter of law, Mark had changed, by overcoming his driving history and the risk it presented, and was no longer a reckless driver. We offer no

-12-

opinion on what part, if any, the Hudsons' corrective actions would play in regard to the proximate cause issue.

Summary judgment on a traditional basis was not warranted.

CONCLUSION

Because the Hudsons were not entitled to either a no-evidence summary judgment or a traditional summary judgment, we reverse the judgment and the cause is remanded for further proceedings.

Phil Johnson
Chief Justice